```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                              08 Civ. 9425 (WCC)
JAMES GARTEN,                          :
                                                  ECF CASE
                Plaintiff,             :

        - against -                    :      OPINION
                                               AND ORDER
JERE HOCHMAN, individually, and the    :
BEDFORD CENTRAL SCHOOL DISTRICT,
                                       :
                Defendants.
                                       :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                      LOVETT & GOULD
                                      **Attorneys for Plaintiff**
                                      222 Bloomingdale Road
                                      White Plains, NY 10605

JONATHAN LOVETT, ESQ.

       Of Counsel


                                      RUTHERFORD & CHRISTIE, L.L.P.
                                      **Attorneys for Defendants**
                                      369 Lexington Avenue, 8th Floor
                                      New York, NY 10017

LEWIS R. SILVERMAN, ESQ.

       Of Counsel

**CONNER, Senior D.J.:**

This § 1983 action was brought by James Garten ("plaintiff") against defendants the Bedford Central School District (the "District") and Jere Hochman, Superintendant of Schools for the District ("Hochman" and together with the District, "defendants"). Plaintiff claims that defendants, by reassigning his children from the West Patent Elementary School to the Pound Ridge Elementary School, violated his "right of intimate association, right to free speech, and right to petition government for the redress of grievances as guaranteed by the First and Fourteenth Amendments to the United States Constitution." (Complt. ¶¶ 1, 11.) On December 24, 2008, plaintiff filed a motion for a preliminary injunction and/or a permanent injunction that would require defendants to re-enroll his children in the West Patent Elementary School. For the reasons stated herein, plaintiff's motion is denied.

### BACKGROUND

Plaintiff is the biological father of two infant children, Braden, born in 2000, and Sophia, born in 2002 (the "children"). (Garten Decl. ¶ 1; Complt.¶ 3.) In 2003, plaintiff commenced a divorce action against his then wife, Kari Puckhaber ("Puckhaber"), the biological mother of Braden and Sophia. (Garten Decl. ¶ 2.) At the time of their divorce, both plaintiff and Ms. Puckhaber were residents of Bedford, New York. (Silverman Suppl. Decl., Ex. F ¶ 2.) In 2005, in connection with their divorce proceeding, plaintiff and Puckhaber entered into a parenting agreement with respect to the children in which they agreed that the children would attend the West Patent Elementary School. (Garten Decl. ¶ 3.) This agreement was endorsed and entered as a court order by the Westchester County Supreme Court. (*Id.* ¶ 4.) According to Hochman, plaintiff and Puckhaber

"share custody of [their] children on a generally equal basis, thereby entitling them to determine whether the children would attend the school associated with [plaintiff's] residence or the school associated with Puckhaber's residence." (Silverman Suppl. Decl., Ex. F ¶ 4.) Hochman further states that, when he became involved in this matter in September 2008, "[plaintiff] had lived in a residence, [in an] attendance zone [which] permitted the children to attend the West Patent Elementary School, the school which [the] children had attended the previous school year," while "Puckhaber lives in a residence associated with the attendance zone for the Pound Ridge Elementary School." (*Id*.)

Plaintiff contends that, in September 2008, Puckhaber, "[d]eliberately intending to breach the [parenting] agreement for her personal convenience (given the location of her residence within the attendance zone for the Pound Ridge Elementary School . . .), and intending to induce the District to tortiously interfere with the 2005 agreement . . . solicited Defendant . . . Hochman to remove Braden and Sophia from the West Patent Elementary School and enroll them in the Pound Ridge Elementary School." (Garten Decl. ¶ 5.)  According to defendants' account of the incident, "Puckhaber contacted the District and advised that the plaintiff had moved out of the District and further inquired when the children would be transferred to [the] Pound Ridge Elementary School." (Defs. Mem. Opp. Mot. Prelim. Inj. at 2.) Upon receiving this notice from Puckhaber, the District commenced an investigation and Hochman arranged for a hearing on the matter to be held by an impartial hearing officer on October 29, 2008. (*Id*.)

Following the hearing, which included testimony from plaintiff and Puckhaber and the submission of documentary evidence, the hearing officer issued a written report, dated October 31, 2008. (*Id*. at 2-3.) As related in this report, the hearing officer found that "[plaintiff] has not established by any standard of proof that he is a resident of the Bedford Central School District, as

2

that is defined in Education Law Section 3200" and that "[s]ince the only connection to the Bedford Central School district the children . . . have is the mother's home in Pound Ridge, the appropriate school for them to be enrolled in is the Pound Ridge Elementary School." (*Id*. at 3.) The hearing officer, therefore, recommended to Hochman that the children "'cease to be enrolled in the West Patent Elementary School and that they be enrolled in the Pound Ridge Elementary School.'" (*Id*.) By letter addressed to plaintiff and Puckhaber, dated October 31, 2008, Hochman upheld the hearing officer's recommendations and pronounced that, "effective immediately, Sophia and Braden are reassigned to [the] Pound Ridge Elementary School." (*Id*.; Silverman Decl., Ex. B.)

  According to plaintiff, he "vigorously opposed Hochman's intended course of action," contending that the children did not want to be enrolled in the Pound Ridge Elementary School and were doing well academically at the West Patent Elementary School; that "from an educational/pedagogical perspective it was in the best interests of Braden and Sophia to remain in the West Patent Elementary School"; and that the District should not interfere with the "post-divorce matrimonial dispute" and court-ordered parenting agreement between himself and Puckhaber. (Garten Decl. ¶ 7.) Defendants were given a copy of the parenting agreement. (*Id.*) According to plaintiff, when his children were informed that they were being reassigned to the Pound Ridge Elementary School, "they were emotionally distraught, uncomprehending, bewildered, frightened, tearful about having to leave both [the] West Patent Elementary School and their friends and teachers there, and understood that their forced reassignment was [plaintiff's] 'fault.'" (*Id*. ¶ 10.) Plaintiff contends that, as a result, "[his] relationship with [the children] has been severely strained, a circumstance both reasonably foreseeable, expected, and intended by Hochman." (*Id.*)

  On November 3, 2008, plaintiff filed an Article 78 petition challenging the administrative

3

decision, simultaneously filing an Order to Show Cause against the District and Puckhaber in Westchester County Supreme Court, which was executed by that court and made returnable on December 2, 2008. (Defs. Mem. Opp. Mot. Prelim. Inj. at 3.) The Order to Show Cause provided that, pending a hearing and determination of the validity of the administrative decision, the decision's effect would be stayed and the children would be assigned to the West Patent Elementary School. (Silverman Decl., Ex. C.) On November 3, 2008, plaintiff filed the instant action. On November 10, 2008, plaintiff filed an Amended Order to Show Cause in the Article 78 proceeding, seeking the same relief as the initial Order to Show Cause, but omitting the stay that assigned the children to the West Patent Elementary School. (*Id.*, Ex. E.) The Amended Order to Show Cause was executed by the Westchester County Supreme Court and made returnable on December 2, 2008. (*Id.*) According to defendants, the Amended Order to Show Cause has been fully submitted and currently remains pending. (Defs. Mem. Opp. Mot. Prelim. Inj. at 4.) Defendants state that the children attended the West Patent Elementary School until November 11, 2008, when the Amended Order to Show Cause was executed, and that they now attend the Pound Ridge Elementary School. (*Id.*)

     Plaintiff seeks, through this motion, a preliminary injunction and/or permanent injunction mandating that defendants re-enroll the children in the West Patent Elementary School. (Pl. Mem. Supp. Mot. Prelim. Inj. at 1.) Defendants oppose the motion on the merits and also request that this matter be stayed pending resolution of the Article 78 petition. (Defs. Mem. Opp. Mot. Prelim. Inj. at 9.)

4

**DISCUSSION**

**I.    *Younger* Abstention**

After extensively discussing why we should deny plaintiff's motion for a preliminary injunction, defendants briefly argue that we should stay the instant action pending resolution of plaintiff's Article 78 petition. (Defs. Mem. Opp. Mot. Prelim. Inj. at 9.) Defendants contend that "[t]he relief . . . plaintiff seeks . . . can be awarded by a finding in his favor in the state court proceeding," which is a more appropriate venue for plaintiff's claims because there the entire record will be reviewed; that "plaintiff's factual claims here rise and fall on whether the District acted appropriately, which will also be determined by the state court"; and that "because substantially the same issue is being considered by both courts, considerations of judicial economy, comity and deference to state court proceedings weigh in favor of granting a stay here." (*Id*.) Plaintiff did not respond to their argument.[1]

We agree with defendants that the instant case, where the underlying claim that defendants inappropriately transferred the children from one school to another is currently under review by a New York state court, implicates concerns for judicial economy, comity and deference to state courts, and we therefore invoke the *Younger* abstention doctrine here. "The *Younger* doctrine requires a federal court to abstain from enjoining a pending state proceeding, absent extraordinary circumstances, where an important state interest is involved, and the movant will have an adequate opportunity to raise his constitutional claims in the state proceedings." *Selkin v. State Bd. for Prof'l Med. Conduct*, 63 F. Supp. 2d 397, 401 (S.D.N.Y. 1999) (Conner, J.) (citing *Younger v. Harris*, 401

---

[1] Plaintiff declined to file a reply brief in further support of his motion for a preliminary injunction.

U.S. 37, 43-56 (1971)). The doctrine is derived from the prudential consideration that interference with a state proceeding by a federal court "would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the Constitution of the United States." *Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 183 (2d Cir. 1991) (internal quotation marks and citation omitted). The doctrine is applicable to suits for injunctive relief, although the Second Circuit has held that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for . . . injunctive relief, but that a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000).

"*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). Because all three conditions are satisfied here, the Court finds that *Younger* abstention is warranted in this case. First, there is an ongoing state proceeding. An Article 78 proceeding is a state proceeding. *See, e.g. Dorsett-Felicelli, Inc. v. County of Clinton*, 349 F. Supp. 2d 355, 361 (N.D.N.Y. 2004). Plaintiff's Article 78 petition, filed on November 3, 2008, remains pending.

Second, an important state interest is implicated in that proceeding. The Supreme Court has held that "[a] bona fide residence requirement . . . furthers the *substantial state interest* in assuring that services provided for its residents are enjoyed only by residents," and that the state "has a *substantial interest* in imposing bona fide residence requirements to maintain the quality of local

6

public schools." *Martinez v. Bynum*, 461 U.S. 321, 328, 329-30 (1983) (emphasis added). Furthermore, the Second Circuit has recognized that the state has a "compelling" interest in educating its youth, *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 462 (2d Cir. 1996) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 221 (1972)), and courts in this Circuit have held that "the state has a sufficient state interest in managing education to warrant abstention." *Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist.*, 920 F. Supp. 393, 397 (E.D.N.Y. 1996). *See also Greenburgh No. 11 Fed'n of Teachers v. Bd. of Educ. of Greenburgh Eleven Union Free Sch. Dist.*, 2006 WL 4490731, at *2 (S.D.N.Y. Sept. 26, 2006); *Does v. Mills*, 2005 WL 900620, at *6 (S.D.N.Y. Apr. 18, 2005). Here, the state has an important interest in determining whether the children in its public schools satisfy the residency requirements of the state education laws.

Third, the ongoing state proceeding affords plaintiff an adequate opportunity for judicial review of his federal constitutional claims. Here, plaintiff asserts federal constitutional claims under the First and Fourteenth Amendments. Constitutional claims may be brought in Article 78 proceedings relating to education. *Strippoli v. Bickal*, 21 A.D.2d 365, 368-69 (N.Y. 1964), *aff'd*, 16 N.Y.2d 652 (1965). *See also Christ the King Reg'l High Sch. v. Culvert*, 815 F.2d 219, 224-25 (2d Cir. 1987) ("[T]he constitutional issues involved in this case [including a First Amendment claim] may be decided in an Article 78 proceeding pursuant to the New York Civil Practice Rules and Laws.") (internal citations omitted); *Selkin*, 63 F. Supp. 2d at 403 (In case involving right of intimate association, "[a]ll challenges to the constitutionality of the relevant statutes, as applied to [plaintiff], may be raised in the Article 78 proceeding.") Therefore, plaintiff can bring his constitutional claims in the pending state court proceedings. All three *Younger* conditions are satisfied in this case.

Finally, the Court finds that no exception to the *Younger* doctrine applies here. Exceptions to abstention should be made only on a "showing of bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54. In this case, the Article 78 petition was brought by plaintiff himself; he does not and cannot contend that it was brought or conducted in bad faith. Accordingly, *Younger* abstention is appropriate.

When a case involves claims for money damages, "the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding." *Kirschner*, 225 F.3d at 238. In this case, the pending state proceeding is an Article 78 proceeding. Money damages are recoverable in Article 78 proceedings if they are "incidental" to the primary relief sought. *Id.* at 238-39 (citing *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (1999); N.Y. C.P.L.R. 7806). Plaintiff seeks punitive damages of at least $10,000,000.00 and compensatory damages of at least $20,000,000.00. (Complt. at 7.) Such damages are not "incidental" to the primary relief sought - reassignment of the children to the West Patent Elementary School. The likelihood that plaintiff will be able to obtain such damages against defendants in the pending Article 78 proceeding is remote. Therefore, although the *Younger* doctrine is satisfied here, dismissal of the action is inappropriate; instead, the action will be stayed pending resolution of the ongoing state court proceedings.

## II.     Preliminary Injunction

Even if *Younger* abstention did not apply in this case, the Court would deny plaintiff's motion for a preliminary injunction. A party seeking a preliminary injunction must establish (a) that

the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits to make those questions a fair ground for litigation and that the balance of the hardships tips decidedly toward the party requesting the preliminary relief. *Eng v. Smith*, 849 F.2d 80, 81-82 (2d Cir. 1988). "A preliminary injunction is an extraordinary equitable remedy." *Am. Metro. Enters. of N.Y. v. Warner Bros. Records, Inc.*, 389 F.2d 903, 904 (2d Cir. 1968) (internal quotation marks and citation omitted). Therefore, "[m]ovants seeking preliminary injunctive relief . . . have a 'heavy burden' to sustain." *Baumgarten v. County of Suffolk,* 2007 WL 1490487, at *4 (E.D.N.Y. Feb. 20, 2007); Magistrate's Report and Recommendation, *adopted*, 2007 WL 1490482 (E.D.N.Y. May 15, 2007).

### A.     Irreparable Harm

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983) (internal quotation marks and citation omitted). "To be irreparable, the injury must be one that mere money damages could not remedy." *Manbeck v. Katonah-Lewisboro Sch. Dist.*, 403 F. Supp. 2d 281, 284 (S.D.N.Y. 2005) (Conner, J.) (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

Plaintiff attempts to demonstrate irreparable harm by (1) arguing that defendants, by having assigned his children to the Pound Ridge Elementary School, are depriving him of the right of intimate association with his children (Garten Decl. ¶ 11), which, plaintiff contends, is a right

9

protected by the First Amendment (Pl. Mem. Supp. Mot. Prelim. Inj. at 7) and (2) directing the Court to precedent holding that the loss of First Amendment freedoms always constitutes irreparable injury. (*Id.*, citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 492 (2d Cir. 2007).)  We find, however, that plaintiff's reliance on the First Amendment as the source of the right of intimate association in the context of this case is misplaced.

The right of intimate association "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state," *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984)), including those relationships that "attend . . . the raising and education of children." *Roberts*, 468 U.S. at 619.  "The source of the intimate association right has not been authoritatively determined." *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999).  *See also Oglesby v. Eikszta*, 2007 WL 1879723, at *10 (N.D.N.Y. June 28, 2007) ("[T]he source of a right to intimate association in the U.S. Constitution is anything but obvious.")  However, "this constitutional right is real despite the lack of exact knowledge regarding its derivation and contours."  *Patel v. Searles*, 305 F.3d 130, 133 (2d Cir. 2002).

Other courts have found the right of intimate association to be grounded in both substantive due process under the Fourteenth Amendment and in the First Amendment.  *See Oglesby*, 2007 WL 1879723, at *10.  Generally, while the Fourteenth Amendment Due Process Clause protects an individual's liberty interests in entering certain intimate relationships, the First Amendment protects associational interests related to speech and petition.  *Adler*, 185 F.3d at 43 ("The willingness to consider individual claims under a First Amendment analysis might be due to courts' recognition of such claims as asserting the sort of retaliatory action that is often tested against the First

10

Amendment whenever adverse action is alleged to have been taken for exercise of any of the freedoms protected by the First Amendment."); *Pizzuto v. County of Nassau*, 240 F. Supp. 2d 203, 209, 209 n.2 (E.D.N.Y. 2002).

In the Second Circuit, "[c]ases . . . which specifically deal with the right to intimate association vis-a-vis parent-child relationships, do so applying the principles of substantive due process." *See Oglesby*, 2007 WL 1879723, at *10 (citing *Anthony v. City of New York*, 2001 WL 741743, at *12 (S.D.N.Y. July 2, 2001), *aff'd*, 339 F.3d 129 (2d Cir. 2003); *Wilkinson ex. rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999)). Plaintiff has not cited, and the Court has not found, any Second Circuit case analyzed under a First Amendment framework involving a claimed violation of the right of intimate association between parent and child that did not also involve alleged retaliation for activities protected by the First Amendment, such as speech, petition or association. *Compare Agostino v. Simpson*, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008) ("Where a plaintiff is allegedly retaliated against for the First Amendment activities of a family member and asserts a claim based on intimate association, the courts in this Circuit have considered the claim as deriving from the First Amendment.") (citing *Adler*, 185 F.3d at 44) *with Pizzuto*, 240 F. Supp. 2d at 209, 209 n.2 (analyzing claimed violation of right to familial association with son, who was murdered by corrections officers, under Fourteenth Amendment rather than First Amendment "because the freedom to associate guaranteed by the First Amendment protects associational interests related to speech and petition, and because those associational interests are not implicated in this case."). *See also Sutton v. Vill. of Valley Stream, N.Y.*, 96 F. Supp. 2d 189, 192-93 (E.D.N.Y. 2000). Therefore, plaintiff's asserted violation of the right of intimate association cannot be based on the First Amendment unless plaintiff has established a valid First Amendment

11

retaliation claim.

In order to bring a claim for First Amendment retaliation, a plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (internal citation omitted). Plaintiff has not met this standard. First, assuming that the "interest protected by the First Amendment" here is plaintiff's right of intimate association with his children, he has not alleged that defendants' actions "were motivated or substantially caused by his exercise of that right." *Id.; See Complt.* Nor is there any evidence in the record before the Court to support a claim that defendants retaliated against plaintiff because he exercised his right of intimate association with the children. Thus, if the First Amendment right claimed to be "chilled" is plaintiff's right of intimate association with his children, plaintiff cannot meet the second element of the standard.

Second, assuming the First Amendment interest implicated here is plaintiff's right to oppose the reassignment of his children, plaintiff has neither alleged in the Complaint nor demonstrated in this motion that defendants' actions "effectively chilled the exercise" of that right. Rather, plaintiff has succeeded in initiating not only the current action but also an Article 78 proceeding challenging the reassignment. Clearly, plaintiff's right to oppose the reassignment of his children has not been chilled by any action of the defendants. Furthermore, although plaintiff does allege that defendants, in reassigning the children, "intended to punish [p]laintiff for vigorously opposing . . . the coerced reassignment" (Complt. ¶ 13), these allegations are not substantiated by the record, as plaintiff has submitted no evidence as to defendants' motives for the reassignment beyond plaintiff's own

testimony speculating as to their intent. There is no competent evidence in the record that suggests that defendants reassigned the children in order to "punish" plaintiff. Furthermore, based on the allegations in the Complaint and the facts as set forth in plaintiff's motion papers, plaintiff first voiced his opposition to the reassignment *after* Hochman notified plaintiff of the planned reassignment, indicating that the initial idea for the reassignment was not "motivated or substantially caused" by plaintiff's opposition to the plan. Plaintiff has not alleged that he exercised any First Amendment right that preceded defendants' initial notification that the children would be reassigned and, thus, could have motivated defendants' decision. Thus, plaintiff has made no showing that he is likely to prevail on the merits under this theory of retaliation.

Therefore, plaintiff has not brought a viable claim of violation of his right of intimate association based on the First Amendment, and his argument for irreparable harm based solely on the ground that his First Amendment rights were violated cannot be sustained.[2] Plaintiff makes no

---

[2] Plaintiff, to support his proposition that the right of intimate association is protected by the First Amendment in this case, cites *Piscottano v. Murphy*, 511 F.3d 247 (2d Cir. 2007), *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999), *Bates v. Bigger*, 56 Fed. App'x 527 (2d Cir. 2002), and *Spanierman v. Hughes*, 576 F. Supp. 2d 292 (D. Conn. 2008). (Pl. Mem. Supp. Mot. Prelim. Inj. at 7.) However, these cases either do not support the proposition asserted or can be distinguished from the case at bar. The *Piscottano* Court, affirming the dismissal of the plaintiffs' intimate association claims, did not specify whether those claims were properly grounded in the First Amendment. 511 F.3d at 278-80. In addition, *Piscottano* is distinguishable because that case involved a retaliation claim (plaintiffs argued that defendants disciplined them for associating with certain others), *id.* at 280, while in this case, plaintiff has not established a viable retaliation claim, as discussed above. *Adler* and *Bates* also involved retaliation claims and, thus, are distinguishable for the same reason. *Adler*, 185 F.3d at 44; *Bates*, 56 Fed. App'x at 527. *Spanierman* did not involve the right of intimate association.
  Plaintiff also cites *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City University of New York* for the strict scrutiny standard that is applied to claims that a government regulation interfered with "close familial relationships." 502 F.3d 136, 143 (2d Cir. 2007). That case involved a First Amendment associational claim and, therefore, is not applicable to the case at bar. *Id*. at 139.

other showing of irreparable harm and the Court does not discern any from the record on this motion. The children are still attending school and there is no evidence in the record before the Court to suggest that their current school, the Pound Ridge Elementary School, is inferior to their prior school, the West Patent Elementary School. Nor is there any evidence to suggest that the reassignment will result in plaintiff spending less time with the children than he did before the reassignment. Although the children may understandably have been upset with and resentful of plaintiff upon learning of the reassignment, this alone does not rise to the level of "irreparable harm." Plaintiff has not directed the Court to, nor did the Court uncover, any case holding that transferring children to a comparable school within the same school district constitutes irreparable harm. *See Pride v. Cmty. Sch. Bd. of Brooklyn, N.Y. Sch. Dist. #18*, 482 F.2d 257, 259, 269 (2d Cir. 1973) (affirming district court's denial of motion for preliminary injunction to reassign children to schools "within the district in accordance with past practice" and upholding finding of no irreparable harm because, *inter alia*, the new school to which children were assigned was "likely to provide an educational experience at least as productive and beneficial as that offered by [the children's former school]").

For the foregoing reasons, plaintiff has failed to sustain his burden of demonstrating that he will suffer irreparable harm if the Court does not grant the injunctive relief sought.

### B. Likelihood of Success on the Merits and Balancing of Hardships

Nor has plaintiff demonstrated a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. As discussed above, for purposes of this motion, plaintiff grounds his argument that his right of intimate association has been

violated on the First Amendment. However, the First Amendment does not protect plaintiff's asserted right and, therefore, plaintiff is not likely to succeed on the merits of that argument. *See supra* Part II.A.

The Court now examines the merits of plaintiff's claim if the asserted right is analyzed as originating in the substantive due process rights guaranteed by the Fourteenth Amendment rather than in the First Amendment.[3] "Substantive due process protects against governmental action that is arbitrary, . . . conscience shocking, . . . or oppressive in a constitutional sense, . . . but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted). As noted above, in the Second Circuit, principles of substantive due process are applied when analyzing the right of intimate association in cases involving parent-child relationships. *See Oglesby*, 2007 WL 1879723, at *10. Under those principles, "family members have, in general terms, a . . . right . . . to remain together without the coercive interference of the awesome power of the state." *Anthony*, 339 F.3d at 142-43 (internal quotation marks and citation omitted).

However, the application of this standard to alleged violations of the right of intimate association has varied from case to case. *See Oglesby*, 2007 WL 1879723, at *11. Some courts will not find that the right has been violated "unless the challenged action has the likely effect of ending the protected relationship." *Adler*, 185 F.3d at 43. Other courts will not find a violation "unless

---

[3] Although plaintiff's brief invokes only the First Amendment and nowhere discusses the substantive due process rights originating in the Fourteenth Amendment, plaintiff alleges in his Complaint that defendants "violated [his] right of intimate association as guaranteed by the First *and Fourteenth* Amendments." (Complt. ¶ 17 (emphasis added).) Therefore, we consider whether plaintiff is likely to succeed on his claim if the right of intimate association that he asserts is grounded in the Fourteenth Amendment.

affecting the relationship was the purpose of the challenged regulation" or an "undue intrusion by the state into the [family] relationship." *Id.* at 43-44 (internal quotation marks and citations omitted). Others will not find a violation unless the defendant's actions are "shocking, arbitrary, and egregious." *Anthony*, 339 F.3d at 143. Furthermore, one court has noted that "while many cases make clear that parents have a constitutionally protected liberty interest in the custody, care, education and management of their children . . . implying that the liberty interest is not in custody alone, the court's research has not revealed a single case where relief was awarded for violation of the right of intimate association without a loss of custody." *See Oglesby*, 2007 WL 1879723, at *11 (internal citations omitted).

Under any of these variations of the application of the standard, plaintiff has demonstrated neither a likelihood of success on the merits nor sufficiently serious questions going to the merits to make those questions a fair ground for litigation. *Eng*, 849 F.2d at 81-82. At the outset, we note that defendants' actions in reassigning the children from one school to another within the same district, which was based on an impartial hearing officer's recommendations after applying New York Education Law, was not "arbitrary, . . . conscience shocking, . . . or oppressive in a constitutional sense." *Lowrance*, 20 F.3d at 537 (internal citations omitted). Likewise, the reassignment cannot fairly be described as an "undue intrusion by the state into the [family] relationship," *Adler*, 185 F.3d at 43, and even less so as "shocking, arbitrary, and egregious." *Anthony*, 339 F.3d at 143. Although plaintiff sets forth that the children have been angry with him since they learned they would be moving schools, the plaintiff has made no showing that the reassignment, or the children's reaction, will have "the likely effect of *ending* the protected relationship." *Adler*, 185 F.3d at 43 (emphasis added). Nor, as discussed above, has plaintiff

proffered any evidence tending to show that defendants' purpose in reassigning the children was to affect the relationship. Finally, defendants' actions did not result in plaintiff losing custody of the children. Therefore, even if plaintiff's argument is analyzed under a substantive due process framework, plaintiff is unlikely to succeed on the merits, and, further, there are no sufficiently serious questions going to the merits to make them a fair ground for litigation.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion for a preliminary injunction (Doc. # 5) is denied in its entirety and the action is stayed pending the outcome of the Article 78 proceeding. The Clerk's Office is directed to transfer this action to the Suspense Docket of the Court pending the outcome of the Article 78 proceeding.

SO ORDERED.

Dated: White Plains, New York
       January 28, 2009

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Sr. United States District Judge