UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES GARTEN,

                      Plaintiff,

      v.

JERE HOCHMAN, individually, and the
BEDFORD CENTRAL SCHOOL DISTRICT,

                      Defendants.

**ECF CASE**

08 Civ. 9425 (PGG)

**MEMORANDUM OPINION & ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff James Garten brings this action against Defendants Jere Hochman and the Bedford Central School District asserting claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment right to intimate association and his First Amendment right to free speech and to petition the government for the redress of grievances.

        Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, Defendants' motion to dismiss will be GRANTED.

## BACKGROUND

        In 2003, Garten commenced an action for divorce against his then wife, Kari Garten. (Cmplt. ¶ 6) Kari and James Garten have two children together, Braden Mackenzie Garten and Sophia Jane Garten. (Cmplt. ¶¶ 3, 6)

        In connection with the divorce proceeding, Kari and James Garten appeared before Special Judicial Referee James Montagnino on April 5, 2005. (Cmplt. ¶ 7) At that time, Kari and James entered into a parenting agreement. (Id.) With respect to Braden and Sophia's education, the agreement provided that "educational decisions that are to be made on behalf of

the children will be joint decisions. But the parties at this time are agreeing that the children will remain in the Bedford Central School District through twelfth grade unless they otherwise agree." (Cmplt. ¶ 7) Kari and James also agreed that "the children will be in the West Patent Elementary School for their elementary schooling." (Id.) Kari and James stated under oath that they intended to "live up to all of the promises" in the agreement and were instructed by Montagnino that their agreement was fully binding. (Cmplt. ¶ 8)

The Complaint alleges that in or about September 2008, Kari solicited Defendant Hochman, Superintendent of Schools for the Bedford Central School District, to remove Braden and Sophia from the West Patent Elementary School and enroll them in the Pound Ridge Elementary School, another school in the same school district. (Cmplt. ¶¶ 5, 9). The Complaint claims that Kari "[d]eliberately intend[ed] to breach the agreement for her personal convenience (given the location of her residence within the attendance zone for the Pound Ridge Elementary School)." (Id.)

After having "supposedly learned" that Garten had moved to North Salem – leaving his house in the West Patent area unoccupied – Hochman informed Garten that he intended to enroll Braden and Sophia in the Pound Ridge Elementary School. (Cmplt. ¶ 10)

The Complaint pleads that Garten:

> in his dual capacities as father and citizen vigorously opposed Hochman, non-disruptively advocating that: i) Braden and Sophia were happy at the West Patent Elementary School and did not want to be enrolled in the Pound Ride Elementary School; ii) from an educational/pedagogical perspective it was in the best interests of Braden and Sophia to remain in the West Patent Elementary School; iii) from a psychological perspective it was in the best interests of Braden and Sophia to continue their education in the West Patent Elementary School; iv) the District should not insinuate itself into a post-divorce matrimonial dispute where the venue of the children's education had since 2005 been embodied in a jointly agreed to court order that imposed on Kari a contractual

2

>and enforceable obligation not to interfere with the children's education at the West Patent Elementary School; and <u>inter alia</u> v) Hochman, and through him the District, abandon his plan, intended to pander to Kari, to interfere with Braden and Sophia's education to their detriment.

(Cmplt. ¶ 11)

On October 31, 2008, Hochman informed Garten that Sophia and Braden had in fact been reassigned to Pound Ridge Elementary School. (Cmplt. ¶ 12) Braden and Sophia were allegedly "emotionally distraught, uncomprehending, bewildered, frightened [and] tearful" after being told that they were to leave West Patent Elementary School. (Cmplt. ¶ 14) The Complaint alleges that Braden and Sophia understood their "forced reassignment" to be their father's fault and, as a result, Garten's relationship with his children "has been severely strained, a circumstance both reasonably foreseeable, expected, and intended by Hochman." (<u>Id.</u>)

>The Complaint further alleges that, in reassigning Braden and Sophia, Hochman

>>i) recklessly disregarded the children's best interests and intended to cause Plaintiff emotional upset and anxiety; ii) deliberately refused to properly exercise his plenary discretion to allow them to continue in the West Patent Elementary School despite his understanding that their coerced reassignment would adversely affect the quality of Braden and Sophia's education and impair their emotional well being; iii) appreciated that his unilateral reassignment of the children would case Braden and Sophia anxiety and substantial emotional upset; iv) correctly anticipated that, by reason of Plaintiff's opposition to the reassignment and Kari's advocacy in favor of the reassignment, both Braden and Sophia would resent their father's failure and/or inability to keep them enrolled in the West Patent Elementary School; v) intended to punish Plaintiff for vigorously opposing as contrary to the best interests of Braden and Sophia the coerced reassignment; vi) intended to punish Plaintiff for urging Hochman, and through him the District, not to facilitate Kari's deliberate violation of the 2005 agreement; vi) and <u>inter alia</u> intended to interfere with Braden and Sophia's intimate familial relationship with their father.

(Cmplt. ¶ 13)

3

This action was filed on November 3, 2008. Garten brings claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment right to intimate association (Cmplt. ¶¶ 16-17) and for violations of his First Amendment right to free speech and to petition the government for the redress of grievances. (Cmplt. ¶¶ 18-19)

On January 28, 2009, Judge Conner denied Garten's motion for a preliminary or permanent injunction mandating that Defendants re-enroll Braden and Sophia in the West Patent Elementary School on the grounds that the abstention doctrine articulated in Younger v. Harris, 401 U.S. 37, 43-56 (1971), required that the case be stayed in deference to a pending Article 78 proceeding. Garten v. Hochman, No. 08 Civ. 9425 (WCC), 2009 WL 302267, at *3-5 (S.D.N.Y. Jan. 28, 2009). Judge Conner noted that even if Younger abstention did not apply, he would have denied the motion for a preliminary injunction because Garten had failed to demonstrate either a risk of irreparable harm or a likelihood of success on the merits. Id. at *5-9. The Court noted that Garten had "not brought a viable claim of violation of his right of intimate association based on the First Amendment" and had not demonstrated a "likelihood of success" as to his Fourteenth Amendment claim. Id. at *7, 9.

This case was reassigned to this Court on July 22, 2009, following Judge Conner's death. Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(c).

## **DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing

4

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. 544).

I.  **GARTEN FAILS TO STATE A CLAIM FOR VIOLATIONS OF HIS RIGHT TO INTIMATE ASSOCIATION.**

The right to intimate association "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state." Sanitation & Recycling Indus. v. City of New York, 107 F.3d 985, 996 (2d Cir. 1997) (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984)). The right "extends to relationships that 'attend the creation and sustenance of a family,'" including "'the raising and education of children.'" Sanitation & Recycling Indus., 107 F.3d at 996 (quoting Roberts, 468 U.S. at 619).

A.  **Garten Has Not Pled Facts Demonstrating that He Was Retaliated Against for Exercising His First Amendment Rights**

Garten brings his intimate association claim under both the First[1] and Fourteenth Amendments. The Second Circuit has noted that "'[t]he source of the intimate association right

---

[1] Relying on Judge Conner's decision denying Garten's motion for a preliminary injunction, Defendants argue that his First Amendment claim is barred by the law of the case doctrine. (Def. Br. 6-7) In denying Plaintiff's motion, Judge Conner relied – as an alternative ground – on his finding that Garten had not brought a valid claim under the First Amendment. See Garten, 2009 WL 302267, at *7.
"The doctrine of the law of the case ''posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.''" Aramony v. United Way of

5

has not been authoritatively determined.'" Piscottano v. Murphy, 511 F.3d 247, 278 (2d Cir. 2007) (quoting Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999)).

Courts in this circuit have acknowledged that a First Amendment right to intimate association is implicated "[w]here a plaintiff is allegedly retaliated against for the First Amendment activities of a family member." Agostino, 2008 WL 4906140, at *9; see also Adler, 185 F.3d at 42 (determining that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right to intimate association"); Sutton v. Village of Valley Stream, 96 F. Supp. 2d 189, 192-93 (E.D.N.Y. 2000) (holding that plaintiff had stated a claim for violation of his First Amendment right to intimate association where he alleged that his employer harassed him in retaliation for his father's political activities). The Second Circuit has observed that

> [t]he willingness to consider individual claims under a First Amendment analysis might be due to courts' recognition of such claims as asserting the sort of retaliatory action that is often tested against the First Amendment whenever adverse action is alleged to

---

Am., 254 F.3d 403, 410 (2d Cir. 2001) (quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 165 n.5 (2d Cir. 2000), cert. denied, 532 U.S. 920 (2001) (quoting Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996)).  "'Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'" Aramony, 254 F.3d at 410 (quoting In re Crysen/Montenay, 226 F.3d at 165 n.5).  Moreover, the law of the case doctrine is not typically applied in connection with preliminary determinations, such as a ruling on a motion for a preliminary injunction.  See Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 274 (2d Cir. 1992) ("A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment . . . . It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions.").

Given that Defendants here seek to rely on a decision rendered in the context of a motion for a preliminary injunction, and given that Judge Conner's ruling was an alternative holding, this Court will not apply the law of the case doctrine to bar Garten's First Amendment claim.

>have been taken for exercise of any of the freedoms protected by
>the First Amendment.

Adler, 185 F.3d at 43.

Where the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process. See, e.g., Patel v. Searles, 305 F.3d 130, 136-38 (2d Cir. 2002); Wilkinson v. Russell, 182 F.3d 89, 103-06 (2d Cir. 1999); see also Oglesby v. Eikszta, No. 07 Civ. 00051 (NPM), 2007 WL 1879723, at *10 (N.D.N.Y. June 28, 2007).

The facts alleged in the Complaint are insufficient to state a claim for violation of Garten's First Amendment right to intimate association. Garten has not adequately alleged that Defendants retaliated against him – for exercising his First Amendment rights – by interfering with his right to intimate association. See Adler, 185 F.3d at 42; Agostino, 2008 WL 4906140, at *9; Sutton, 96 F. Supp. 2d at 192-93. Garten alleges in a conclusory fashion that Hochman reassigned Braden and Sophia to the Pound Ridge Elementary School "to punish [Garten] for vigorously opposing as contrary to the best interests of Braden and Sophia the coerced reassignment." (Cmplt. ¶ 13(v)) Garten alleges no facts to support this assertion, however, much less "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft, 129 S. Ct. at 1949. In sum, Garten has failed to state a claim for violation of his First Amendment right to intimate association, and that claim will be dismissed.[2]

---

[2] As noted below, even if Garten were able to plead facts demonstrating that he had suffered retaliation as a result of exercising his First Amendment rights, he has not shown that his constitutional right to intimate association was violated.

### B.   Garten Has Not Pled Facts Demonstrating that Defendants Interfered with His Right to Intimate Association

The "standard applied in determining whether th[e] right [to intimate association] has been violated" has "varied":

> Sometimes court opinions suggest that an intimate association right is not violated unless the challenged action has the likely effect of ending the protected relationship, see, e.g., Lyng v. Int'l Union, UAW, 485 U.S. 360, 364-44 (1988) (challenge to provision rendering family of striker ineligible for food stamps rejected because of unlikelihood that it would prevent families from dining together), or unless affecting the relationship was the purpose of the challenged regulation, see, e.g., Califano v. Jobst, 434 U.S. 47, 54 (1977) (challenge to provision terminating disability benefits to secondary beneficiary upon marriage rejected because it was not "an attempt to interfere with the individual's freedom to make a decision as important as marriage") (footnote omitted).  In other cases, the opinions consider whether the challenged action alleged to burden an intimate association is arbitrary or an "'undue intrusion' by the state into the marriage relationship." Adkins v. Board of Education, 982 F.2d 952, 956 (quoting Roberts, 468 U.S. 609 at 618).

Adler, 185 F.3d at 43.

The Second Circuit has cautioned against "formalistic vision[s] of how severe the impairment to the right of intimate association must be" in light of the Supreme Court's "statement that constitutional protections for associational interests are at their apogee when close family relationships are at issue." Patel, 305 F.3d at 137 (citing Roberts, 468 U.S. at 619-20).

Even in this context, however, the Complaint does not allege sufficient interference with Garten's right of intimate association with his children to state a constitutional claim under the standards set forth in Adler.  Garten has not alleged – nor could he – that the decision to move Braden and Sophia from one school to another had "the likely effect of ending" his relationship with his children.  See Adler, 185 F.3d at 43.  Indeed, the Complaint alleges only

8

that the decision caused the children to blame Garten for the transfer and to "resent" his failure to prevent it. (Cmplt. ¶¶ 13-14) While this may have "severely strained" the relationship between Garten and his children (Cmplt. ¶ 14), severe strain is a far cry from ending the relationship between parent and child.

Garten has also failed to provide any factual support for his allegation that the decision to move Braden and Sophia to Pound Ridge Elementary School was motivated by a desire to interfere with his relationship with his children. See Adler, 185 F.3d at 43. Indeed, the Complaint contains only the conclusory assertion that the transfer was intended to punish Garten and to interfere in his relationship with his children. The Complaint acknowledges, however, that Defendants have contended throughout that the transfer stemmed from the fact that Braden and Sophia now reside in an area served by Pound Ridge Elementary School (Cmplt. ¶ 10), and the Complaint offers no facts suggesting that the motivation was otherwise.

Finally, the Complaint does not allege that the transfer of Braden and Sophia constituted an "arbitrary or an ''undue intrusion''" on the relationship between Garten and his children. See Adler, 185 F.3d at 43. While the Complaint suggests that the transfer was not in Braden and Sophia's best interests (Cmplt. ¶¶ 11, 13), it does not aver that the transfer was arbitrary, nor could it given the rationale for the transfer acknowledged in the Complaint.

The Complaint likewise does not allege an "undue intrusion" on Garten's relationship with his children – indeed, the allegations are limited to complaining that Braden and Sophia's transfer to Pound Ridge "severely strained" the relationship between Garten and his children because they held him responsible for the decision. Garten has failed to cite any case in which such a limited intrusion – essentially, an action that caused limited discord in a family – was held sufficient to state a claim for a constitutional violation.

9

A review of other cases involving alleged violations of the substantive due process right to intimate association in the parent-child context demonstrates that Garten's allegations are insufficient to sustain a constitutional claim. For example, in connection with child custody, the Second Circuit has held that the substantive due process right to familial association is not infringed unless the separation of parent and child is "'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" Anthony v. City of New York, 339 F.3d 129, 142-43 (2d Cir. 2003) (quoting Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999)); see also Oglesby, 2007 WL 879723, at *10 (noting that "the court's research has not revealed a single case where relief was awarded for violation of the right of intimate association without a loss of custody"). The limited disruption in the parent-child relationship alleged here does not approach the kind of "shocking, arbitrary, and egregious" interference the Second Circuit has associated with a constitutional violation.

## II.   GARTEN HAS ABANDONED HIS CLAIM FOR VIOLATION OF HIS RIGHT TO FREE SPEECH AND RIGHT TO PETITION THE GOVERNMENT FOR THE REDRESS OF GRIEVANCES

The Complaint asserts that Defendants violated Garten's First Amendment right to free speech and to petition the government for the redress of grievances. (Cmplt. ¶¶ 18-19). In response to Defendants' contention that he failed to adequately plead this claim (Def. Br. 9-11), Garten presents no factual or legal argument. Accordingly, these claims have been abandoned and will be dismissed. See, e.g., Brandon v. City of New York, No. 07 Civ. 8789 (LAP), 2010 WL 1375207, at *4 (S.D.N.Y. Mar. 30, 2010) (dismissing claims as abandoned where plaintiff "did not raise any arguments opposing Defendants' motion regarding these two claims"); Bonilla v. Smithfield Assoc. LLC, 09 Civ. 1549 (DC), 2009 WL 4457304, at *4

(S.D.N.Y. Dec. 4, 2009) (dismissing claims as abandoned where plaintiff "fails to respond" to defendants' arguments on a motion to dismiss); Thomas v. Atl. Express Corp., 07 Civ.1978 (SCR), 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (same); Burchette v. Abercrombie & Fitch Stores, Inc., 08 Civ. 8786 (RMB), 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (same).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Docket No. 20) and to close this case.

Dated: New York, New York
June 15, 2010

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge